UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY W.,

        Plaintiff,

        v.                                      **DECISION AND ORDER**
                                                   20-CV-1291S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Kimberly W.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since April 13, 2016, due to various physical conditions. Plaintiff maintains that she is entitled to disability benefits because her impairments render her unable to work.

        2.      Plaintiff filed an application for disability benefits on November 21, 2016. After denial at the agency level, Plaintiff proceeded to a hearing, which took place before ALJ Susan Smith via videoconference on November 29, 2018. At the time of the hearing, Plaintiff was 46 years old, with at least a high school education, and had past relevant work as an electronic assembler and a small products assembler. The ALJ considered the case *de novo* and, on March 20, 2019, issued a written decision denying Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on July 21, 2020.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

1

3. Plaintiff filed the current action on September 14, 2020, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on August 2, 2021. (Docket Nos. 9, 11-13.) The Clerk of Court assigned the case here on August 31, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 14.) For the following reasons, Plaintiff's motion will be granted, Defendant's motion will be denied, and this matter will be remanded to the Commissioner for further proceedings.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405 (g).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405 (g); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v.

---

[2] The ALJ's March 20, 2019 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6. As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

3

The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 405 (g), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.  See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).  This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

      8.    "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent

analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

5

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.     The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12.     In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 13, 2016, the alleged onset date (R. at 15);[3] (2) Plaintiff's degenerative disc disease (status-post cervical fusion surgery, arthropathy, migraine headaches, and right shoulder bicep tear are severe impairments within the meaning of the Act (R. at 15-16); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 16); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work but with limitations consisting of frequent climbing of stair and ramps, stooping, kneeling, balancing, and crouching; occasional crawling; occasional climbing of ladders, ropes, or scaffolds; avoiding concentrated exposure to irritants, such as dusts, fumes, odors,

---

[3] Citations to the underlying administrative record are designated as "R."

6

gases, and poor ventilation; occasional reaching overhead bilaterally; and limited to a moderate noise level (R. at 16-21); (5) Plaintiff could not perform her past relevant work (R. at 21); but (6) Plaintiff could perform jobs that exist in significant number in the national economy, including school bus monitor, counter clerk, and fruit distributor (R. at 22-23). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from April 13, 2016, through March 20, 2019, the date of the decision. (R. at 13, 23.)

13.     Plaintiff challenges the ALJ's decision on three fronts. First, she argues that the ALJ made a mistake of fact concerning the postponement of a surgical procedure that the Appeals Council failed to consider and correct. Second, she argues that the ALJ's RFC determination is not supported by substantial evidence because it fails to fully account for her migraine condition. Third, she contends that the RFC determination is additionally unsupported by substantial evidence because it fails to include limitations related to her limited ability to rotate her head and neck. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed. Because this Court finds that remand is necessary for proper consideration of Plaintiff's migraine condition, it does not reach Plaintiff's other arguments, which the ALJ and the parties are free to revisit on remand.

14.     Plaintiff argues that the ALJ erred by failing to properly account for her documented migraine condition in the RFC. Specifically, she argues that the ALJ failed to properly evaluate the impact of her migraine condition on her ability to work on a regular and continuing basis. Moreover, she contends that the ALJ's conclusion that a limitation to only moderate noise level adequately accounts for her migraine condition is unsupported by substantial evidence. In response, Defendant maintains that the ALJ

7

properly assessed Plaintiff's headaches and reasonably found that they did not require any further limitation in the RFC.

15. The record reflects that Plaintiff has a long history of migraine headaches that she has struggled to control. (R. at 695.) She treated at Dent Neurologic Institute ("Dent"), where she saw various physicians and nurse practitioners who tried to help manage her condition. Just before her onset date, Plaintiff was experiencing eight to ten headaches per month. (R. at 699.) After treatment including prophylaxis medication and nerve blocks, Plaintiff reported a slight decrease in headache in August 2016. (R. at 695-698, 701.) She was continued on Sumatriptan tablets and injections and encouraged to take Cyclobenzaprine or Baclofen to help decrease the frequency of her migraines, which were still occurring several times per month. (R. at 698.)

16. In November 2016, Neurologist Laszlo Mechtler ordered a plan of care for in-home intravenous treatment of Plaintiff's migraine condition to be administered by the Visiting Nurse Association ("VNA") after Plaintiff experienced a severe headache (8/10 on pain scale) that required immediate intervention. (R. at 893-896, 899.) This started a course of regular and frequent treatments, including medications, trigger-point injections, nerve blocks, and intravenous at-home infusions. (R. at 897-912, 967-980, 987-991, 1142, 2110-14.)

17. Plaintiff's condition worsened by January 2017, when she reported to Dent that she was experiencing daily migraines ranging from seven to ten on the 10-point pain scale. (R. at 2207.) Plaintiff reported pulsating and throbbing sensations in her right frontal and temporal regions that were associated with photophobia (sensitivity to light), phonophobia (sensitivity to sound), osmophobia (sensitivity to odors), and nausea. Id.

Plaintiff continued her course of medications and continued to receive at-home infusions for her migraine condition throughout 2017 and early 2018. (R. at 1008, 1015-1029, 1058-1073, 1089-1094, 1087, 1316-1331.)

18. In April 2018, an MRI of Plaintiff's brain returned an abnormal result consistent with a migraine condition: two small foci of long T2/FLAIR hyperintensities in the juxta cortical white matter of the right and left parietal lobes. (R. at 1414-1415.) The two foci were not seen in Plaintiff's previous MRI in July 2010. (R. at 1415.) Five days after these results, Plaintiff presented at Dent with a worsened headache profile, reporting 20 headaches per month, with at least eight to ten of them migraines lasting longer than four hours. (R. at 2168.) These headaches continued to be associated with sensitivities to light, sound, and odor. Id. Plaintiff further reported experiencing blind spots and temporary blindness associated with the headaches. Id. Dent continued to treat with nerve blocks and injections. (R. at 2171, 1291-94.)

19. Plaintiff returned to Dent again in June 2018, at which time she continued to report experiencing 20 headaches per month, with eight to ten of them migraines lasting longer than four hours. (R. at 1340.) Dent increased and adjusted Plaintiff's medications and prescribed a dosepak of Medrol. (R. at 1343.) Later that month Plaintiff received Botox injections for her migraines, which continued to occur. (R. at 2160, 2162.) Plaintiff received a similar course of treatment in July 2018, including continued at-home infusions. (R. at 1364-1380, 2147, 2152, 2155-2159, 2223.)

20. Plaintiff followed up with Dent again in September 2018, at which time she reported that her headaches were significantly decreased to only 16 since her last evaluation in June 2018. (R. at 2143.) Dent continued Plaintiff's medications and

administered a nerve block. (R. at 2145-2146.) Plaintiff continued to receive Botox and nerve block injections through November 2018 as a regular course of treatment. (R. at 2139-2142, 2136-2138, 2501-2505.)

21. In addition to the information in Plaintiff's medical records, Plaintiff testified about her headaches at the hearing before the ALJ on November 29, 2018. She explained that her headaches began when she was an infant and continued throughout her life. (R. at 272.) She testified that she gets "a whole slew of them [headaches] . . . like 10 to 15" per month but has trouble distinguishing the number because they last several days "so that I don't get a break." (R. at 280.) She testified that her migraine treatment regimen included trigger point injections, monthly SPG blocks, and quarterly Botox injections, all of which required her to be at the doctor's office several times per month. (R. at 281.) She also indicated that she self-administered Aimovig but discontinued those shots after she exhausted her free samples and her insurance would not cover the treatment. Id. Plaintiff also testified that she receives infusion treatments between three and five times per year, either at her doctor's office or at her home from a visiting nurse. (R. at 281-282.) For immediate relief, Plaintiff self-administers Imitrex injections 10 to 15 times per month to manage her migraine pain. (R. at 282.) Plaintiff further testified that her migraine regimen, particularly the Imitrex, makes her drowsy and causes her to nap every day. (R. at 293.)

22. The ALJ considered this evidence and summarized it in her written decision yet found that the only RFC limitation required was a restriction to moderate noise level. (R. at 19-20 ("To account for her migraines, the residual functional capacity finding limits the claimant to a moderate noise level.").) This conclusion is not supported by substantial

evidence. First, the ALJ mistakenly understood the April 2018 MRI of Plaintiff's brain to be "unremarkable," when in fact the MRI reflected abnormalities consistent with a migraine condition. (R. at 19.) Correctly recognizing that Plaintiff's migraine condition was supported by objective medical evidence may well have changed the ALJ's consideration of the limitations associated therewith.

23. Second, to the extent the ALJ sought to limit Plaintiff's exposure to headache triggers through the RFC, she accounted for only two of three such triggers without explanation. Limiting Plaintiff's exposure to noise levels and odors[4] does not ameliorate headaches caused by Plaintiff's sensitivity to light. Third, the ALJ failed to consider (or explain her consideration of) the effect that Plaintiff's treatments would have on her ability to work, both in terms of the physical toll they take (e.g., drowsiness, naps) and the time away from work they would take (e.g., intravenous infusions). While it is "not require[d] that [an ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability," Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983), an ALJ must nonetheless "explain the bases for his findings with sufficient specificity to permit meaningful review," Sewar v. Berryhill, 17-CV-6211L, 2018 WL 3569934, at *2 (W.D.N.Y. July 25, 2018). See also Pamela P. v. Saul, 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (discussing ALJ's obligation to "provide rationale in the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings").

---

[4] This Court notes that the ALJ included the odor restriction to address Plaintiff's history of asthma, not her migraines, which were accommodated by only the noise restriction. (R. at 19-20, 21.) Nonetheless, it remains that an odor restriction is present in Plaintiff's RFC.

24.     Finally, to the extent the ALJ simply concluded that Plaintiff's migraine condition has improved, she failed to consider the degree of improvement and the history of Plaintiff's regressions.  In this Court's view, the record shows a difficult-to-manage migraine condition that fluctuates in its degree of severity, yet consistently retains severe aspects that may well impact Plaintiff's ability to work.  No explanation is provided for how the uncontrolled aspects of Plaintiff's headache condition would not limit her ability to work or warrant further limitations in the RFC.  See, e.g., Graham v. Berryhill, No. 16-CV-6787-FPG, 2017 WL 5019274, at *4 (W.D.N.Y. Nov. 3, 2017) ("The record indicates that Graham suffered from migraines three to four times per week for 20 minutes to a few hours . . . It is plausible, for example, that this could interfere with Graham's ability to concentrate and stay on task and that she might require additional breaks throughout the workday."); Johnson v. Comm'r of Soc. Sec., No. 2:13-CV-217, 2014 WL 2118444, at *5 (D.Vt. May 21, 2014) ("By finding that Johnson's migraines constituted a severe impairment, the ALJ implicitly found that the impairment 'significantly limit[ed] [Johnson's] . . . ability to do basic work-related activities.'") (quoting 20 C.F.R. § 404.1521 (a)).  The ALJ's failure to consider or explain her consideration of these points requires remand for proper consideration of Plaintiff's migraine condition.

25.     Accordingly, after carefully examining the administrative record, this Court finds cause to remand this case to the Commissioner for further administrative proceedings consistent with this decision.


IT HEREBY IS ORDERED, that Plaintiff's motion (Docket No. 11) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:	September 21, 2021
	Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge